UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ' |
| v. | ' CRIMINAL NO. 17-CR-618 |
| ANTHONY MACE,<br>Defendant. | ' |

## PLEA AGREEMENT

The United States of America, by and through Abe Martinez, Acting United States Attorney, and Suzanne Elmilady, Assistant United States Attorney, and Sandra Moser, Acting Chief of the Fraud Section of the Criminal Division of the United States Department of Justice ("Fraud Section") and Dennis R. Kihm, Trial Attorney, and the defendant, Anthony Mace ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count One of the Information. Count One charges Defendant with conspiracy to violate the Foreign Corrupt Practices Act, Title 15, United States Code, Sections 78dd-2 and 78dd-3 ("FCPA"), in violation of Title 18, United States Code, Section 371. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Information, or proved to a jury beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for a violation of Title 18, United States Code, Section 371, is imprisonment of not more than five years and a fine of not more than $250,000 or

twice the gross gain or loss. Additionally, Defendant may receive a term of supervised release after imprisonment of up to three years. See Title 18, United States Code, Sections 3571(b)(3), 3571(d), and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. See Title 18, United States Code, Section 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

**Mandatory Special Assessment**

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

**Immigration Consequences**

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

**Waiver of Appeal and Collateral Review**

5. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and

sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

6. Defendant waives all defenses based on venue, speedy trial under the Constitution and Speedy Trial Act, and the statute of limitations, in the event that (a) Defendant's conviction is later vacated for any reason, (b) Defendant violates any provision of this Agreement, or (c) Defendant's plea is later withdrawn.

7. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound

3

to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

8. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

9. The United States agrees to each of the following:

(a) At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he receive a two (2) level downward adjustment pursuant to section 3E1.1(a) of the United States Sentencing Guidelines, should Defendant accept responsibility as contemplated by the Sentencing Guidelines; and

(b) If Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, the United States agrees not to oppose Defendant's request for an additional one-level departure based on the timeliness of the plea or the expeditious manner in which Defendant provided complete information regarding his role in the offense (if Defendant's offense level is 16 or greater).

### Agreement Binding - Southern District of Texas and Fraud Section Only

10. The United States Attorney's Office for the Southern District of Texas and the Fraud Section agree that they will not further criminally prosecute Defendant for offenses arising from conduct charged in the Information. This plea agreement binds only the United States Attorney for the Southern District of Texas, the Fraud Section, and the Defendant. It does not bind any other United States Attorney's Office or any other unit of the Department of Justice.

4

The United States Attorney's Office for the Southern District of Texas and the Fraud Section will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, including prosecution offices in foreign countries, if requested.

## United States' Non-Waiver of Appeal

11. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

12. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the

5

sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

13. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

14. Defendant is pleading guilty because he is in fact guilty of the charge contained in Count One of the Information. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

From in or around April 2008 until in or around December 2011, Defendant was CEO of "Oil Services Company." "Oil Services Company," an entity whose identity is known to Defendant, was a publicly-traded company in the Netherlands, headquartered in Amsterdam, with other principal offices in Monaco, Marly, Switzerland and Houston, Texas, and subsidiaries in Houston, Texas. Oil Services Company specialized in designing, constructing, and providing offshore oil and gas drilling equipment, including Floating Production Storage and Offloading vessels ("FPSO"s), to, among others, state-owned and state-controlled oil and gas companies, including Petróleo Brasileiro S.A. ("Petrobras"), the state-owned and state-controlled oil company for Brazil; Petróleos de Guinea Ecuatorial ("GEPetrol"), the state-owned and state- controlled oil company for Equatorial Guinea; and Sociedade Nacional de Combustíveis de Angola, E.P. ("Sonangol"), the state-owned and state-controlled oil company for Angola.

While Defendant was CEO, he was also a Board Member for one of Oil Services Company's wholly-owned Houston, Texas-based subsidiaries, "U.S. Subsidiary 1." U.S. Subsidiary 1 was responsible for certain engineering projects, but also supported Oil Services Company's worldwide operations, including its marketing and sales operations.

7

"Executive 1" was a high-level executive at Oil Services Company from 2004 until 2008.

"Executive 3" was a high-level executive in Oil Services Company's Marketing and Sales Department from 2000 until 2008.

"Intermediary 1" was a Brazil-based oil and gas services intermediary that operated as Oil Services Company's sales agent in Brazil from 1996 until 2012.

Beginning by at least in or around 1996, before Defendant became CEO, Oil Services Company, U.S. Subsidiary, certain principals and employees of Oil Services Company, including Executive 1 and Executive 3, certain of Oil Services Company's sales agents, including Intermediary 1's owner, and others entered into an agreement to pay bribes to foreign officials, including officials at Petrobras, Sonangol and, GEPetrol, in order to obtain or retain business for Oil Services Company, in violation of the Foreign Corrupt Practices Act.

In April 2008, Defendant became CEO of Oil Services Company. As CEO, Defendant held oversight authority over the entire company, including its Marketing and Sales Department. Further, Defendant was required to personally approve payments exceeding a certain dollar amount, including those made to outside sales agents.

At the time Defendant became CEO, he was aware that paying bribes to foreign officials was a crime under the Foreign Corrupt Practices Act and that Oil Services Company was operating in countries with a high risk of corruption. Despite this, Defendant joined the conspiracy by continuing to make payments that furthered the bribery scheme and deliberately avoiding learning that certain payments, including payments Defendant authorized and approved, were in fact bribes paid to foreign officials. Defendant's deliberate avoidance was solely and entirely due to his own actions and decisions.

Beginning by in or around the fall of 2008, Defendant was in possession of a spreadsheet reflecting over $16 million in payments to five individuals to be paid through a company controlled by Executive 3. Defendant was aware of a high risk that those individuals were either Equatorial Guinean officials or persons receiving money on behalf or at the direction of such officials. Defendant nevertheless authorized the following transfers from a bank account in the United Kingdom under Oil Services Company's control, through a bank account in the United States, to a Switzerland-based bank account controlled by Executive 3:

| Date Paid | Amount |
|---|---|
| October 29, 2009 | $3,637,150 |
| April 29, 2010 | $645,150 |
| September 21, 2010 | $645,150 |
| March 30, 2011 | $645,150 |
| December 2, 2011 | $12,489,400 |

Defendant updated the spreadsheet to reflect that the payments were made.

Beginning in or around November 2008, Defendant continued a practice that was instituted before he became CEO, which was to authorize Oil Services Company's finance department to issue split payments to Intermediary 1. Specifically, Defendant authorized a portion of Intermediary 1's commission paid to an account in Brazil, and another portion of Intermediary 1's commission paid to accounts in Switzerland, which were held in the name of shell companies. Defendant deliberately avoided learning the ultimate recipients of those payments, which were, in fact, employees of Petrobras.

| Date Paid | Amount to Intermediary 1 | Amount to Shell Company |
|---|---|---|
| November 24, 2008 | $1,756,650 | $3,513,300 |
| May 12, 2009 | $597,500 | $1,195,000 |
| August 4, 2010 | $0 | $1,656,391 |
| December 15, 2011 | $33,022.72 | $66,045.45 |
| December 27, 2011 | $0 | $859,875.65 |

9

## Breach of Plea Agreement

15. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Fines – Generally

16. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

17. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

18. Defendant agrees to take all steps necessary to pass clear title to assets to the United States and to assist fully in the collection of fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

### Fines

19. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Complete Agreement

20. This written plea agreement, consisting of 14 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

21. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on November 9, 2017.

_____
ANTHONY MACE
Defendant


Subscribed and sworn to before me on November 9, 2017.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK


By:_ Deputy United States District Clerk


APPROVED:

Abe Martinez
Acting United States Attorney
Southern District of Texas

By: _____
Suzanne Elmilady
Assistant United States Attorney
Southern District of Texas
Telephone: (713) 567-9342

_____
Anthony Mace
Defendant

Sandra Moser
Acting Chief
Criminal Division, Fraud Section
United States Department of Justice

_____
Dennis R. Kihm
Trial Attorney
Criminal Division, Fraud Section
(202) 616-2999

_____
Nicolas Bourtin, Esq.
Attorney for Defendant

12

UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT
OF TEXAS HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ' | |
| v. | ' | CRIMINAL NO. 17-CR-618 |
| ANTHONY MACE,<br>Defendant. | ' | |

## PLEA AGREEMENT --
## ADDENDUM

I have fully explained to Defendant his rights with respect to the pending Information. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____          __11/9/17_____
Nicolas Bourtin                                                  Date
Attorney for Defendant

13

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____     _____11/9/17_____
**ANTHONY MACE**                    Date
Defendant